SAHLOFF (Raymond A.), individually and as special administrator of the estate of Martha Agnes Sahloff, deceased, Respondent, v. WESTERN CASUALTY & SURETY COMPANY, Appellant.

*No. 2.   Argued October 31, 1969.—Decided November 25, 1969.*
(Also reported in 171 N. W. 2d 914.)

For the appellant there was a brief by *Aberg, Bell, Blake & Metzner* of Madison, and oral argument by *Carroll E. Metzner.*

For the respondent there was a brief by *Ross, Stevens, Pick & Spohn,* attorneys, and *Richard C. Glesner* and *Raymond L. Hoel* of counsel, all of Madison, and oral argument by *Mr. Glesner* and *Mr. Frank A. Ross, Jr.*

HALLOWS, C. J.   On an appeal from the overruling of a demurrer, we are confined to the facts stated in the complaint. The complaint alleged the plaintiff's policy of insurance issued by Western Casualty contained an endorsement protecting him against damages for bodily injury caused by the operator of an uninsured automobile; that this endorsement provided settlement by arbitration and this provision had been expressly waived by the defendant.

The plaintiff alleged that on the 5th day of August, 1962, he as owner of a 1955 Dodge was driving with his wife, a passenger in the front seat, in an easterly direction on County Highway F in Shawano county and when he commenced to make a left-hand turn onto intersecting Highway E, he was struck by one William F. Grosskopf, Jr., driving a 1955 Buick south on County

Highway E. He further alleged that Grosskopf was an uninsured motorist and had negligently invaded his path of and collided with his vehicle, and such negligence was the proximate cause of the damages sustained by him and his wife. His second cause of action sought recovery for the injuries sustained by his wife.

Wisconsin requires by sec. 204.30 (5) (a), Stats., that an automobile-liability insurance policy delivered in this state in respect to a motor vehicle registered in this state to provide coverage for bodily injury "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." The named insured has a right to reject such coverage. The exact endorsement on the plaintiff's policy is not disclosed in the pleading, but presumably it is the customary form issued in compliance with this section of the statute.

Uninsured motorist coverage originated in a standard endorsement promulgated in 1956 by the National Bureau of Casualty Underwriters. Its use was in response to the threat of various legislatures to require compulsory automobile-liability insurance of all motorists. A majority of the states have now adopted statutes similar to or substantially the same as sec. 204.30 (5) (a) of the Wisconsin Statutes [1] adopted in 1965 and requiring in-

---

[1] "204.30 (5) UNINSURED MOTORIST COVERAGE. (a) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto in limits for bodily injury or death in the amount of at least $10,000 per person and $20,000 per accident under provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. The named insured has the right to reject such coverage. . . ."

surance companies to offer uninsured motorist coverage. Laws of 1965, ch. 486, sec. 1. Consequently, opinions of other jurisdictions construing the standard endorsement are of significance.

The sole issue on this appeal is whether a suit brought on the uninsured motorist coverage is governed by the three-year tort statute of limitations of sec. 893.205 (1), Stats., or by the six-year statute of limitations prescribed for contracts in sec. 893.19 (3). We think the trial court was correct in holding this complaint stated a cause of action in contract and not in tort and the six-year statute was applicable.

The uninsured-motorist-coverage endorsement does not state a period of time within which claims thereunder must be presented. The three arguments of Western Casualty for the application of the tort statute of limitations have been discussed and evaluated by the cases and literature on the subject. They are: (1) Because the tort statute of limitations has run and barred any suit against the uninsured motorist, the insured consequently has no rights under the terms of the endorsement requiring that he be "legally entitled to recover;" [2] (2) that the insured's claim for injuries is based upon the negligent tort of the uninsured motorist and therefore possesses the character of that action in tort; [3]

[2] See Travelers Indemnity Co. v. Bell (1963), 213 Cal. App. 2d 541, 29 Cal. Rptr. 67; Remarks of Frederic Parcher and Bradford, Uninsured-Insured Vehicle Collision Results in Claims by Owners and Passengers (Discussion), 31 Ins. Counsel J. (1964), 608, 615; Comment, Uninsured Motorist Insurance, 48 Cal. L. Rev. (1960), 516, 531, n. 76; Note, Uninsured Motorist Coverage, 12 Cleveland Mar. L. Rev. (1963), 66, 78.

[3] See Schleif v. Hardware Dealer's Mut. Fire Ins. Co. (1966), 218 Tenn. 489, 404 S. W. 2d 490, 493; Aksen, Arbitration Under the Uninsured Motorist Endorsement, 1965 Ins. L. J. 17, 22; Kuvin, The Effect on Uninsured Motorist Proceedings of: Statute of Limitations; Survival of Actions Act; Wrongful Death Act; Subrogation Rights, 29 Ins. Counsel J. (1962), 127; Pretzel, Uninsured Motorist: Uneasy Money—Unless Modified, 1965 Ins.

(3) that once the tort statute of limitations has run, the insurance company is foreclosed from exercising its subrogation rights against the uninsured motorist as provided in the endorsement and it is unfair to allow recovery against it.[4]

Western Casualty relies mainly on cases from Louisiana, Tennessee, and South Carolina, but in analyzing these cases, we find in them little support for the contention that the tort statute of limitations should apply. Two of the intermediate appellate court decisions from Louisiana [5] are no longer the law in that state and one case does not support Western Casualty's position. In *Booth,* the Second Circuit held the action was not barred by the one-year tort statute of limitations because the action was one in contract. The *Fremin Case* of the Fourth Circuit did support Western Casualty's position. The *Thomas Case* of the First Circuit, while holding the action under the uninsured-motorist-coverage endorsement was an action *ex contractu* also held the action was governed by the tort statute of limitations. On appeal in *Thomas v. Employers Mut. Fire Ins. Co.* (1968), 253 La. 531, 218 So. 2d 584, the Louisiana Supreme Court overruled the intermediate appellate court and held the tort statute of limitations was applicable. The position of the court on appeal in *Booth v. Fireman's Fund Ins. Co.* (1968), 253 La. 521, 218 So. 2d 580, is in accord.

It is true as contended by Western Casualty, that in *Schleif v. Hardware Dealer's Mut. Fire Ins. Co.* (1966),

L. J. 711, 719; Comment, *Uninsured Motorist Insurance,* 48 Cal. L. Rev. (1960), 516, 531, n. 76.

[4] *See Schleif v. Hardware Dealer's Mut. Fire Ins. Co., supra; Application of Travelers Indemnity Co.,* 226 N. Y. Supp. 2d 16, (Sup. Ct. 1962), *cf.* Aksen, *Arbitration of Uninsured Motorist Endorsement Claims,* 24 Ohio St. L. J. (1963), 589, 592, n. 14.

[5] *Fremin v. Collins* (La. App., 4th Cir. 1967), 194 So. 2d 470; *Thomas v. Employers Mut. Fire Ins. Co.* (La. App., 1st Cir. 1968), 208 So. 2d 374; *Booth v. Fireman's Fund Ins. Co.* (La. App., 2d Cir. 1967), 197 So. 2d 352.

218 Tenn. 489, 495, 404 S. W. 2d 490, 493, the court in applying the contract statute of limitations expressly noted the identity of the hit-and-run driver was not known or ascertainable and therefore the insurer had no subrogation right as a practical matter which was lost. However, we do not read this decision as implying its holding is restricted to hit-and-run uninsured motorist or situations where the subrogation right of the insurer is not prejudiced.

In *Laird v. Nationwide Ins. Co.* (1964), 243 S. C. 388, 134 S. E. 2d 206, the language is more in support of the plaintiff's position than the defendant's. But Western Casualty argues the attitude of the South Carolina court indicated the insured must prove he is "legally entitled to recover" by reducing his claim against the uninsured motorist to a judgment. Consequently, if he has not proceeded in a timely manner, his tort claim would be barred and he would no longer be "legally entitled to recover" as that term is used in the endorsement. By statute California requires suit to be brought against an uninsured motorist as one alternative condition of recovery. *See Fireman's Ins. Co. v. Diskin* (1967), 255 Cal. App. 2d 502, 63 Cal. Rptr. 177; *Travelers Indemnity Co. v. Bell* (1963), 213 Cal. App. 2d 541, 29 Cal. Rptr. 67. This requirement that an insured must obtain a judgment against the uninsured motorist before suing his insurance company prevails in the state of Virginia.[6] But Wisconsin does not require a judgment against the uninsured motorist before suing the insurance company. In fact, the uninsured motorist endorsement does not require suit and expressly provides that no judgment against the uninsured motorist is conclusive upon the insurer's interests unless the action by the insured was

[6] *Doe v. Brown* (1962), 203 Va. 508, 125 S. E. 2d 159; and *Rodgers v. Danko* (1963), 204 Va. 140, 129 S. E. 2d 828.

with the written consent of the insurer. The endorsement also provides in paragraph VI, additional conditions, (C) Assistance and cooperation of the insured, that after notice of claim, the company may require the insured to take such action as may be necessary or appropriate to preserve his rights to recover damages from the uninsured motorist. In the trust-agreement provision of the endorsement, the company after payment to the plaintiff of his claim, may also request, but it must be in writing, that the plaintiff take such action through a representative designated by the insurance company as may be necessary to recover the payment as damages from the uninsured motorist.

Thus an insured under the uninsured motorist endorsement must first make a claim against his insurer. The insurer may then negotiate settlement, require the insured to bring suit against the uninsured motorist in which event it would become bound by the judgment, or make a written demand for arbitration. If the insurer does nothing, the insured may demand arbitration or sue the uninsured motorist without the consent of the insurer. The insured must, however, forward a copy of the summons and complaint to his insurer. *See Allstate Ins. Co. v. Charneski* (1962), 16 Wis. 2d 325, 114 N. W. 2d 489. If an insured deliberately delayed giving notice to his insurer of his claim or refused to bring suit when requested, such action would breach the endorsement provisions.

In the normal adjustment of this type of claim, it is anticipated a settlement will be reached by negotiation and failing that, by arbitration. If the insurer refuses to arbitrate on demand, it breaches its contract. In this case we are not informed of the reason for the breakdown in this process; the complaint alleges only arbitration was waived.

Several other jurisdictions, particularly, New York,[7] Florida,[8] Ohio,[9] and Missouri,[10] have considered an action on the uninsured motorist endorsement as being a contract action and have applied the statute of limitations applicable to contracts. The argument that an insured must be "legally entitled to recover" against the uninsured motorist at the time he requests arbitration in order to be able to establish his claim under the uninsured motorist endorsement has been rejected in some of the cases. See Booth v. Fireman's Fund Ins. Co. (1968), 253 La. 521, 218 So. 2d 580; Laird v. Nationwide Ins. Co., supra; and De Luca v. MVAIC, supra. For a contrary view, see Uninsured Motorist Coverage, 34 Missouri Law Rev. (1969), 1; Vol. XII, Personal Injury Commentator (1969), 128. The author of this article takes the view that if the insured's claim against the uninsured motorist is barred by the statute of limitations, that is, not enforceable, he is not "legally entitled to recover" and should not be allowed recovery under the endorsement coverage.

The "legally entitled to recover" argument seems hardly appropriate on this demurrer which rests on the ground that the tort statute of limitations applies. The gist of the argument is not that the tort statute applies to this action but to the action against the uninsured motorist and consequently this complaint does not state a cause of action.

But in answer to the merits of this argument, the phrase "legally entitled to recover" raises the question

---

[7] De Luca v. MVAIC (1966), 17 N. Y. 2d 76, 215 N. E. 2d 482, 268 N. Y. Supp. 2d 289.

[8] Hartford Accident & Indemnity Co. v. Mason (Fla. 1968), 210 So. 2d 474.

[9] Schulz v. Allstate Ins. Co. (1968), 17 Ohio Misc. 83, 244 N. E. 2d 546.

[10] Hill v. Seaboard Fire & Marine Ins. Co. (Mo. App. 1963), 374 S. W. 2d 606; Noland v. Farmers Ins. Exchange (Mo. App. 1967), 413 S. W. 2d 530, 533.

of whether the insured needs to have only a cause of action against the uninsured motorist or whether his claim must also be enforceable at the time of his suit against his insurer. We think the phrase was used only to keep the fault principle as a basis for recovery against the insurer and deals with the question of whether the negligence of the uninsured motorist and the absence of contributory negligence is such as to allow the insured to recover. This test, of course, may produce a different result in a comparative negligence state than in states where any amount of contributory negligence of the plaintiff is a bar to his recovery. We need not now decide under what rules of conflicts of law that determination should be made. *See Uninsured Motorist Coverage*, 62 Northwestern L. Rev. (1967), 497, 508. Since a suit against an uninsured motorist is not binding upon the insurer unless it consents to the suit, the tort statute of limitations is not relevant to an action on the endorsement. The insured need only have had a cause of action against the uninsured motorist. In this respect, we see no merit in the contention that "legally entitled to recover" has a different meaning in Wisconsin than in any other jurisdiction because Wisconsin holds a statute of limitations extinguishes both the right of action and the remedy. *See Haase v. Sawicki* (1963), 20 Wis. 2d 308, 121 N. W. 2d 876.

Although the phrase "legally entitled to recover" appears both in sec. 204.30 (5) (a), Stats., and in the uniform uninsured motorist coverage, we find no basis in the history of the statute or of the endorsement that coverage should be restricted to those situations in which the insurer can stand in the shoes of the uninsured motorist. The purpose and intent of this type of coverage was to benefit the insured so that he would be reimbursed for his injuries. The purpose was not to provide free liability insurance for an otherwise uninsured motorist; and the endorsement does not do so be-

cause a right of subrogation does exist, if the insurer wishes to preserve it. In settling a claim under the endorsement, the insurer does not represent the uninsured motorist but rather itself on its own contract against its own insured who has paid a premium for this indemnity feature in his liability policy. It is neither necessary under the coverage nor desirable public policy to place the indemnity insurer in exactly the same position of a liability insurer of an uninsured motorist. Consequently the claim against the insurer on the endorsement should be and is treated differently than the cause of action the insured has against the uninsured motorist.

We are not sympathetic with the argument that because the plaintiff's claim against his insurer is founded upon the negligent tort of the uninsured motorist it should be governed by the same considerations as an action for negligence. This is another phase of the argument that the insurer stands in the shoes of the uninsured motorist and therefore should have all his rights. The insurer has not so contracted in the uninsured motorist endorsement. We think it clear the action by an insured against his insurer under the uninsured motorist endorsement is an action on the policy and sounds in contract although in order to recover the insured must prove the negligence of an uninsured motorist. Western Casualty's argument to base an interpretation upon the considerations of the tort action would invoke a new standard of construction of contractual language.

It is true an insurer such as Western Casualty is put to some disadvantage when it can no longer pursue subrogation against an uninsured motorist. However, such hardship does not go to the nature of the cause of action and consequently does not determine what statute of limitations should apply. The application of any statute of limitations generally creates a hardship but it is a hardship because someone delayed doing what he might

have done. Under the uniform endorsement an insurer may compel its insured to bring an action against the uninsured motorist either before or after payment of the claim and thus preserve its subrogation rights. Western Casualty's argument that an action can only be maintained if the insurer's right of subrogation is not prejudiced would create two rules in fact: One for a hit-and-run motorist, and the other for an ascertainable uninsured motorist. We think this argument overrates the importance of subrogation because an uninsured motorist tends to be financially irresponsible and a subrogation right against such a person is not worth very much.

The trial court was correct and should be affirmed.

*By the Court.*—Order affirmed.